AO 91 (Rev. 11/11)   Criminal Complaint

**FILED**
United States District Court
Albuquerque, New Mexico

Erik Paltrow
Clerk of Court

# UNITED STATES DISTRICT COURT
for the

District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Rex H B Crofton YOB 2000 | ) | Case No.    **26mj2987** |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ June 2, 2026 _____ in the county of _____ Bernallilo _____ in the
_____ District of _____ New Mexico _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 247(c), (d)(4) | Damage to religious property |

This criminal complaint is based on these facts:

See attached

☑ Continued on the attached sheet.

*Susanna L Diller*
*Complainant's signature*

Susanna Diller, FBI Special Agent
*Printed name and title*

Electronically signed and telephonically sworn

Date:    06/10/2026

*John F Robbenhaar*
US Magistrate Judge John Robbenhaar
*Judge's signature*

City and state:    Albuquerque, New Mexico

Honorable ~~XXXXXXXXXXXXXX~~ Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE ARREST OF:
**REX H B CROFTON YOB 2000**

Case No.

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

1.      I, Susanna Diller, being first duly sworn, hereby depose and state as follows:

**Introduction and Background of the Affiant**

2.      I make this affidavit in support of a criminal complaint and arrest warrant for

Crofton, Rex H B DOB 07/10/2000 (hereafter Crofton), for a violation of Title 18 U.S.C. §§ 247(c) and

(d)(4), "Damage to religious property."

3.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the

FBI's Albuquerque Field Office. I have been a Special Agent with the FBI since 2022.  I have received

training in interviewing and interrogation techniques, arrest procedures, search and seizure, and

conducting physical surveillance at the Federal Bureau of Investigation Academy in Quantico, VA.

4.      In addition to basic law enforcement training, I have also received training in the

following areas: law, investigative techniques, surveillance, tactics and firearms, interviewing and

interrogation techniques, arrest procedures, search and seizure, and conducting physical

surveillance.

5.      I am assigned to the Joint Terrorism Task Force, a joint federal and local task force to

investigate terrorism and terrorism-related crimes. Prior to my current work assignment, I was

assigned to the Boston Division from November 2022 to May 2026. My duties included, but were not

limited to, the investigation of international terrorism cases and health care fraud.

6.      I have experience with cases involving the following crimes: counterterrorism, health care fraud, money laundering, and civil rights violations. I also have experience utilizing the following investigative techniques and procedures: arrest warrants, debriefing of defendants, informants, and witnesses, executing search warrants, identification and collection of computer-related evidence, interviewing suspects, victims, and witness, search and seizure of computers, computer equipment, software, and electronically stored information, search and seizure warrants, surveillance, use of confidential informants, and pen registers. In addition to my basic law enforcement training at the Federal Bureau of Investigation Academy, I have also received training in the following areas: law, investigative techniques, surveillance, tactics, and firearms, interviewing and interrogation techniques, arrest procedures, search and seizure, and conducting physical surveillance.

7.      I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510; that is, an officer of the United States of America who is empowered to investigate and make arrests for offenses alleged in this warrant.

8.      I make this affidavit based upon my own personal knowledge, which is substantially derived from my participation in the investigation, as well as that of fellow agents and officers who have participated in the investigation. In addition, I have developed information I believe to be reliable from additional sources including:

a.   Information provided by local law enforcement, including oral and written reports I have received directly or indirectly from said investigators;

b.   A review of driver's license and automobile registration records;

c.   Records from the National Crime Information Center (NCIC); and

d.   Information provided by individuals with first-hand knowledge of the criminal activity and/or the alleged perpetrator.

9.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

**Federal Charges Relevant to this Investigation**

10.    I believe there is probable cause that Crofton committed offenses involving violations of Title 18 U.S.C. §§ 247(c) and (d)(4), "Damage to religious property."

a.    Title 18 U.S.C. § 247(c), "Damage to religious property," states that whoever (1) intentionally defaces, damages, or destroys any religious real property, because of the race, color, or ethnic characteristics of any individual associated with that religious property, or attempts to do so shall, if damage to or destruction of property results from the acts committed in violation of this section, which damage to or destruction of such property is in an amount that exceeds $5,000, may be subject to penalties of a fine in accordance with this title, imprisonment for not more than 3 years, or both.  18 U.S.C. §§ 247(c), (d)(4).

11.    As described more fully below, I have reason to believe that Crofton intentionally defaced, damaged, or destroyed religious real property because of the race, color, or ethnic characteristics of any individual associated with that religious property, and that real property damage occurred at two Jewish religious facilities:

- Congregation Albert Synagogue, 3800 Louisiana Boulevard Northeast, Albuquerque, New Mexico 87110. Congregation Albert is a Reform Jewish Synagogue that was established in 1897.

- The Jewish Community Center of Greater Albuquerque, 5520 Wyoming Boulevard NE, Albuquerque, New Mexico 87112. As of this date, damage incurred is estimated to be in excess of $5,000. The JCC is a  501(c)(3) nonprofit organization established in 2000 that offers fitness facilities, early childhood education, and cultural programs to the Albuquerque community at large, and the Jewish community specifically. Among other things, they hold celebrations of Jewish holidays, host holocaust and October 7th remembrance events, and house the Jewish Community Relations Coalition, the Jewish Historical Society, and the Jewish Care Program.

3

**Probable Cause**

12.     On 2 June 2026, FBI Albuquerque received notification that the Albuquerque Police Department (APD) had responded to disturbance calls at Congregation Albert and the JCC.

13.     On 2 June 2026, I received and reviewed multiple APD written police reports and FBI interview notes indicating that at approximately 4:31PM, an individual, now reasonably believed to be Rex Crofton (year of birth 2000), arrived at Congregation Albert in a silver sedan, reported to be a 2-door coupe of Japanese make. Crofton exited the vehicle and used an unknown tool to shatter the glass doors of the synagogue. Crofton was observed by a witness returning to his vehicle. He "flipped off" the synagogue, yelled something indecipherable, then entered his vehicle and left the parking lot. Later, the same witness was shown an image from surveillance footage at the JCC, as more fully described below. The witness stated that the individual in the JCC surveillance image matched the description of the individual he had seen leaving Congregation Albert.

14.     At approximately 4:39PM, about eight minutes after the Congregation Albert incident, Crofton arrived at the JCC.  A basic Google Maps search shows the driving time between Congregation Albert and the JCC to be approximately 6 minutes. I have reviewed surveillance footage from the JCC that captured the incident from several angles.  Surveillance footage from the JCC appears to show Crofton exiting a silver Mazda RX8 and running to the front of the building. The recordings show Crofton repeatedly striking the glass doors of the building with an object appearing to be a crowbar. Based on notes from interviews of witnesses that I have reviewed, witnesses also referred to the tool as an ax. The receptionist called for security, who approached and then pursued Crofton to his vehicle. Crofton can be seen on recording placing the object/tool he used in the car through the open passenger window of his vehicle. A security guard pepper sprayed Crofton through the passenger window of his vehicle as Crofton was attempting to flee. Crofton then drove away from the security guards and left the parking lot.

15.     Both incidents occurred during normal business hours. Surveillance footage from the JCC shows a busy parking lot, with individuals entering and exiting the JCC moments before Crofton

4

began striking the doors. An individual can be seen fleeing from the front of JCC when Crofton began striking the doors. Following the incident, the JCC sent an emergency closure notification to parents advising them that camp pickup procedures were in place and to avoid the facility. There were numerous witnesses at both facilities who were alarmed by the incident.

16.     A security guard at the JCC provided the license plate BNAK47, which APD identified as belonging to a blue Honda registered to Crofton and his mother, M.B. An APD report from 2020 pertaining to a silver Mazda RX8 registered to Crofton indicated a British Colombia plate 401BKL. According to License Plate Reader (LPR) photos that I have reviewed, on 2 June 2026, LPR photos showed Crofton driving a silver Mazda RX8 with the license plate BNAK47. Crofton's DMV photo appeared to match the subject seen on the surveillance footage from the JCC. The subject in the surveillance footage appeared to have arm tattoos. Per the Metropolitan Detention Center Booking Slips Record Detail, Crofton had tattoos on his right forearm and left wrist as of 2020.

17.     I have reviewed notes from FBI interviews of Crofton's sister and sister's boyfriend, H.C. and R.B., respectively, indicating that at approximately 3:30PM on 2 June 2026 (prior to the incident), Crofton spoke to his mother at her home.  Crofton's sister observed this interaction live via Ring camera through her phone. Crofton was reported to be visibly intoxicated and appeared manic. At the end of the conversation Crofton stated he was "going to go kill Jews." According to FBI interviews of Crofton's family, Crofton had grown extremely antisemitic over the preceding year, and Crofton's family had longstanding concerns about his mental health. Crofton had been diagnosed with bipolar disorder and multiple personality disorder but had not seen doctors recently and was not on any prescribed medications.

18.     At approximately 5:10PM, Crofton began to send text messages to his sister's boyfriend, R.B. In a text sent at approximately 5:57PM, Crofton texted "… I just hit two synagogues in 5 minutes." Crofton continued to text R.B. with threatening language. Crofton made threatening statements against police, should they intervene. Crofton stated, "send the cops my way I'd love to kill all of them," "I'll make an example out of all your little cop homies," and "again make a police

5

report I'd love to kill your friends." R.B. and H.C. called 911 at approximately 6:07PM to report Crofton's threats. H.C. stated that Crofton was extremely violent and that the family was very afraid of him. H.C. stated that he owned at least "3 rifles, a shotgun, handguns, and a revolver," and that he visited shooting ranges to practice. M.B. believed Crofton only owned 3 firearms, a revolver, a rifle, and a handgun that was possibly a Glock. The family expressed concerns that he would commit a mass shooting.

19.    On 2 June 2026, APD personnel identified the silver Mazda RX8 at Crofton's home address, 3501 Pitt St. NE, Albuquerque, NM 87111 but did not see Crofton at the property. Later, when FBI personnel were conducting surveillance at this address, FBI personnel observed Crofton returning to the address at approximately 8:04PM in a silver Lexus, New Mexico plate CBWL59. The Lexus belongs to the homeowner of 3501 Pitt St. NE, H.G., who informed the FBI that she sometimes allowed Crofton to use her vehicle. LPR photos showed Crofton driving the Mazda RX8 seen on the surveillance footage from the JCC and additionally showed Crofton driving the silver Lexus, New Mexico plate CBWL59. I have reviewed a YouTube video from 24 April 2026 in which Crofton films a Mazda RX8 and discusses modifications he is making to it and then films a light color Toyota Truck he refers to as his "workhorse." FBI personnel conducted overnight surveillance on the address.

20.    On 3 June 2026, FBI personnel observed Crofton leaving the 3501 Pitt St. address at approximately 6:00AM. He entered a light color Toyota Truck, New Mexico Smokey the Bear plate 0401 and departed the address. FBI personnel followed Crofton in their vehicles but lost him. FBI personnel returned to the address anticipating that Crofton would return. The homeowner of 3501 Pitt St. NE called Crofton and he spoke to FBI personnel. After considerable discussion and assurances of Crofton's safety, Crofton agreed to return to the address and surrender for arrest. When Crofton returned to the address at approximately 7:31AM, he was arrested by APD for two counts of felony criminal damage to property, desecration of a church, hate crimes, and disorderly conduct. Crofton confirmed he resided at the address in a separate shed structure located on the property. Following his arrest, Crofton invoked his right to counsel. However, while waiting for

6

transport, Crofton made a spontaneous utterance to FBI personnel that he had recently been pepper sprayed and that his skin was still burning from the spray. Crofton also made a spontaneous utterance that he was a racist.

21.     On 3 June 2026, FBI personnel executed a federal search warrant on Crofton's residence (a shed at 3501 Pitt St. NE, Albuquerque, NM), vehicles (a silver Mazda RX8 and a white Toyota truck), and cell phone. Multiple items of note were seized, to include what appeared to be the tank top and slides Crofton was seen wearing in surveillance footage, a "T-Type" wrecking bar that appeared to match the tool seen in surveillance footage that Crofton used to strike the doors, a Smith and Wesson revolver, magazines and ammunition for other firearms not found at the scene, and what appears to be a torn Ukrainian flag with a swastika and other symbols drawn on. Crofton's mother advised FBI personnel on 3 June 2026 that in the fall of 2025, Crofton had torn down a flag from a dentist's office in Cedar Crest, New Mexico, because he felt it was connected to Ukrainian Jews. Photographed at the scene but not seized was the New Mexico plate BNAK47 seen in LPR captures, which was found on the passenger floor of the Mazda. Numerous other weapons were identified during the search, primarily in the Toyota truck. These included a riot baton, machete, brass knuckles, and multiple long knives.

## Conclusion

22.     Based on the foregoing, I believe there is probable cause to believe Crofton committed a violation of Title 18 U.S.C. §§ 247(c) and (d)(4), "Damage to religious property," in the District of New Mexico.

23.     This affidavit has been reviewed by Assistant United States Attorneys Tavo Hall, Frederick Mendenhall, and Meg Melick.

Respectfully submitted,

Susanna Diller
Special Agent
Federal Bureau of Investigation

7

Telephonically sworn and electronically signed to before me on ____6/11/2026_____,
2026

UNITED STATES MAGISTRATE JUDGE